**EXHIBIT A**
**AFFIDAVIT OF U.S. POSTAL INSPECTOR JEFFREY M. POWERS**

I, Jeffrey M. Powers, declare and state as follows:

**INTRODUCTION**

1.       I am a United States Postal Inspector currently assigned to the Boston Division
Headquarters of the United States Postal Inspection Service (USPIS), where I have been
employed since February 2019.  Prior to being employed with USPIS, I was a Special Agent
with the United States Postal Service (USPS), Office of Inspector General.  During my 15 years
in federal law enforcement, I have investigated cases involving narcotics trafficking and
distribution, bank fraud, wire fraud, money laundering and other federal crimes.

2.       I am a law enforcement officer of the United States within the meaning of 18
U.S.C. § 3061, and am empowered by law to conduct investigations and to make arrests for
offenses enumerated in 21 U.S.C. § 841(a)(1) and other federal offenses.  I am also a "federal
law enforcement officer" authorized by Rule 41 of the Federal Rules of Criminal Procedure to
apply for federal search warrants.

3.       I am presently assigned to the Prohibited Mail-Narcotics Team.  As a Postal
Inspector assigned to the Prohibited Mail-Narcotics Team, my duties and responsibilities
include, but are not limited to, the investigation of the illegal shipment of controlled substances
and the proceeds from the sale of controlled substances, as well as the laundering of drug
proceeds via the USPS.  I have intercepted, or participated in interdiction efforts resulting in the
intercept of in excess of 50 Express/Priority Mail parcels that were found to have contained
controlled substances or the proceeds from the sales of controlled substances.

4.       I have received training in the areas of search and seizure, narcotics investigations
and criminal law.  I have received training by the USPIS in the investigation of controlled

substances and proceeds/payments for controlled substances being transported through the United States mails.  I am also a 2007 graduate of the Drug Enforcement Administration ("DEA") Basic Narcotics Investigator Course, Quantico, Virginia.

5.      I have participated in numerous investigations involving the transportation of controlled substances or proceeds/payments through the USPS.  Many of these investigations have had national and international connections, and many required me to work closely and share information and intelligence with members of other law enforcement agencies, including the Federal Bureau of Investigation, the DEA, the Massachusetts State Police, and the police departments of local communities.  I have debriefed, and continue to debrief, suspects, informants, and witnesses who have personal knowledge about the sale and distribution of narcotics, money laundering, and related crimes occurring in Massachusetts and nationally.

## PURPOSE OF AFFIDAVIT

6.      This affidavit is made in support of a Verified Complaint for Forfeiture in Rem against the following asset:

  a. $35,980 in United States currency, seized from a USPS Priority Mail Express package bearing tracking number **EJ 435 067 193 US** on October 26, 2020 (the "Defendant Currency").

7.      This affidavit does not contain each and every fact known to me and other law enforcement officers about this investigation.  This affidavit only sets forth sufficient facts to demonstrate probable cause for the forfeiture of the Defendant Currency.

8.      This affidavit is based upon my personal knowledge, as well as information provided to me by other law enforcement personnel, and my review of records and reports related to this investigation.

9.      As set forth below, I have probable cause to believe that the Defendant Currency
is subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(6) because it
represents moneys, negotiable instruments, securities, or other things of value furnished or
intended to be furnished by any person in exchange for a controlled substance or listed chemical
in violation of 21 U.S.C. §§  841 and/or 846, proceeds traceable to such an exchange, and/or
moneys, negotiable instruments, and securities used or intended to be used to facilitate such a
violation.

## THE SEIZURE OF THE DEFENDANT CURRENCY

10.      Experience and drug trafficking intelligence information gathered by the USPIS
have demonstrated that USPS Priority Mail Express and USPS Priority Mail are frequently used
by drug traffickers for shipping drugs and the proceeds from drug sales.  Use of Priority Mail
Express and USPS Priority Mail are favored by drug traffickers because of the speed, reliability,
free telephone and Internet package tracking service, as well as the perceived minimal chance of
detection.

11.      In an effort to combat the flow of controlled substances through the United States
mails, interdiction programs have been established in cities throughout the United States by the
USPIS.  These cities have been identified as known sources of controlled substances.  The
USPIS conducted an analysis of prior packages which were found to contain drugs and drug
proceeds.  The analysis of prior packages that were found to contain drugs or drug proceeds
indicated that these packages were usually from an individual to an individual.  In the few cases
when Express Mail or Priority Mail packages containing drugs or drug proceeds displayed a
business or company name, it was usually proven to be a fictitious business or company, or, in
certain cases, a legitimate company whose name was being used without the knowledge or

authorization of that business.  Additionally, this analysis established a series of package characteristics which, when a package is found with a combination of two or more characteristics described below, have a higher probability that the package will contain a controlled substance or the proceeds of controlled substance sales.  These characteristics include the following: (1) package was mailed from or addressed to a narcotic source city; (2) package has a fictitious return/sender address or name; (3) package has address information which is handwritten; (4) the handwritten mailing label on the package does not contain a business account number, thereby indicating that the sender paid cash; (5) package is addressed from an individual to an individual; and (6) package is heavily taped.

12.     In October 2020, Special Agents with the U.S. Postal Service, Office of Inspector General (USPS-OIG) in Puerto Rico were conducting reviews of USPS parcels inbound to Puerto Rico.  During the review, USPS-OIG Agents identified a suspicious package, bearing tracking number EJ 435 067 193 US (the SUBJECT PACKAGE) shipped from Rhode Island to Puerto Rico, a known source location for narcotics.

13.     The USPS-OIG forwarded the suspicious package to the USPIS for further investigation.  The SUBJECT PACKAGE was shipped to me at the Braintree Detached Mail Unit (DMU) located at 333 Commerce Drive in Braintree, Massachusetts.

14.     On October 23, 2020, I took possession of the SUBJECT PACKAGE.  The SUBJECT PACKAGE was secured inside the Postal Inspection Service Office, within the DMU.  During a review of USPS business records, I identified the SUBJECT PACKAGE was shipped from a United States Post Office located in Providence, Rhode Island to Puerto Rico, a known source location for narcotics on or about October 23, 2020.

15.     The SUBJECT PACKAGE weighed approximately eight pounds and six ounces, and its postage was paid for in cash.  Its handwritten label identified the recipient as "Cristopher Pujols" with a delivery address of "P.O. Box 1696 dorado P.R., 00646."  Based on my review of USPS business records, the post office box 1696 is a valid post office box, but the name "Cristopher Pujols" does not appear to be currently associated with that post office box.  The name "Chistopher Pujols" appears to be presently associated with 47 Union Street, in Taunton, Massachusetts.  Other law enforcement records indicated that the name "Christopher Pujols," (not "Cristopher) was previously associated with the listed delivery address ("P.O. Box 1696 dorado P.R., 00646") in April of 2019.  The handwritten label identified "David Rodriguez" with an address of "1190 Charles St, North Providence R.I, 02904" as the sender.  The sender address for the SUBJECT PACKAGE is a valid mailing address and the name "David Rodriguez" is associated with the listed sender address ("1190 Charles St, North Providence R.I, 02904").

16.     The SUBJECT PACKAGE met at least five of the characteristics described above, indicting a higher probability that it contained controlled substances or the proceeds from the sale of controlled substances.  The SUBJECT PACKAGE (a) bore fictitious or incomplete addressee information, (b) the parcel was mailed to a known drug source area, (c) the parcel bore a handwritten label, (d) it was addressed from an individual to an individual, and (e) postage for the parcel was paid for in cash.

### October 23, 2020: K-9 Response to the SUBJECT PACKAGE

17.     After I took possession of the SUBJECT PACKAGE on October 23, 2020, at approximately 10:20 a.m. that morning, at my request, Officer Richard Seibert of the Braintree Police Department and his narcotic-trained K-9 Lucky arrived at the DMU.  I arranged to meet

5

Officer Seibert and Lucky at the DMU, to review the SUBJECT PACKAGE for the scent of controlled substances.

18.     Officer Seibert has been employed with the Braintree Police for 15 years and has been assigned to the K-9 unit for the last ten years.  Lucky is an eleven and a half-year-old Labrador Retriever.  Officer Seibert uses Lucky to detect controlled substances in different situations, including within sealed packages shipped through the United States mail and other courier services.  Officer Seibert and Lucky attended and successfully completed a 12-week narcotics detection training program run by the Barnstable County Sheriff's Office.  Lucky is certified to detect the presence of narcotic odors, including but not limited to, marijuana, hash, cocaine, crack, heroin, ecstasy, and methamphetamine.  Lucky most recently certified in June 2020, and his certification was in effect in October 2020.  Lucky is a hand-fed food drive dog, which means that he eats only when he finds the target odor (narcotic odor).  As a result of this type of training, Lucky and Officer Seibert are required to train every day for Lucky's meals. Each month Officer Seibert and Lucky complete 16 hours of in-service training with the Massachusetts Department of Corrections.  Lucky has been responsible for the seizure of packages containing various drugs, including marijuana, methamphetamine, cocaine, heroin, suboxone, percocet, klonopin, wellbutrin, oxycodone, methylone, and crack, and is a well-trained and reliable K-9.

19.     Shortly after their arrival, at approximately 10:26 a.m., Officer Seibert and Lucky conducted an examination of the SUBJECT PACKAGE.  The SUBJECT PACKAGE was placed in an area inside the DMU, known to be free from contamination by narcotic odors.  Five other packages were placed in the search area to serve as controls.  Officer Seibert and Lucky searched the area where the SUBJECT PACKAGE and the five control parcels were placed.  Officer

Seibert advised that upon arriving at the SUBJECT PACKAGE, Lucky reacted in a manner that indicated the presence of a narcotic odor.  No further indications were observed in the search area.  Based on my training and experience, I know that a positive alert by a certified drug-detection K-9 means that the contents of the package are controlled substances or that the contents were recently in close proximity to controlled substances.

### Search Warrant Executed on the SUBEJCT PACKAGE

20.     On October 26, 2020, Massachusetts State Troopers, assigned to the USPIS, Boston Division, Narcotics Task Force, and I executed a U.S. District Court, District of Massachusetts, Search Warrant (20-MJ-6668-MPK) on the SUBJECT PACKAGE.  The SUBJECT PACKAGE contained:  Two packages of "Braidbabe" hair extensions, one white USPS Priority Mail cardboard box containing a black case, containing an electric toy.  Secreted within the lining of the black case were four heat sealed plastic bags containing a total of $35,980 in United States currency.  Attached hereto as *Exhibit 1* are photographs of the SUBJECT PACKAGE and its contents.

21.     There were no notes, receipts, or instructions in the parcel.  I know from my training and experience that individuals who traffic in controlled substances rarely include any type of instruction with the proceeds.  Legitimate businesses or personal gifts will contain notes, letters, receipts, cards, or coupons included with the cash or monetary instruments.

### Conclusion

22.     Based on the information set forth above, I believe that there is probable cause to believe that the Defendant Currency is subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(6) because it represents proceeds traceable to an exchange for a controlled

substance or listed chemical in violation of 21 U.S.C. §§ 841 and/or 846, and/or moneys used or intended to be used to facilitate any such violation.

Pursuant to 28 U.S.C. § 1746, I declare under the penalties of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.  Executed this 16th day of April, 2021.


_Jeffrey M. Powers_

Jeffrey M. Powers
Postal Inspector
United States Postal Inspection Service

# EXHIBIT 1

















